

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Tom Seay
County Attorney
Amarillo, Texas

Opinion No. O-4651
Re: Whether improvements placed
upon exempt land of a county by
a lessee, with no right to re-
move the same at the expiration
of the term of such lease, are
taxable as personal property,
and related questions.

Dear Sir:

In your letter of June 16, 1942, you request the opinion of this department upon the following recited facts:

"The County of Potter now owns and has owned for a long time a tract of land in Potter County, most of which is entirely enclosed and which said lands have been used by the Tri-State Fair Association for a great many years for the purpose of conducting the Tri-State Fair therein.

"On the 2nd day of January, 1940, the Commissioner's Court of Potter County, entered its formal order wherein and whereby said Court authorized the County to lease a portion of the above referred to lands to the Amarillo Baseball Club, Inc., for the purpose of constructing thereon a baseball park in which to have public exhibitions of baseball. A copy of the order of the Commissioners' Court referred to is enclosed herewith and you will observe that it sets out in detail the terms and provisions of the contract authorized.

"Pursuant to the order of the Commissioners' Court above referred to, the County Judge, on behalf of the County of Potter, entered into a

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

contract with the Amarillo Baseball Club, Inc.,
in words and figures the same as the contract
referred to in the enclosed order.

"At the time this order was passed and the
contract was entered into, the above referred
to property was situated outside of the City
Limits of the City of Amarillo, but has recently
been incorporated in the City Limits. The prop-
erty now lies and has for a long time lain in
the Amarillo Independent School District.

"Pursuant to the terms of the contract,
the Amarillo Baseball Club constructed upon
the leased premises a baseball park, consist-
ing of grand stand, bleachers, ticket offices,
fences, etc.

"The question has now arisen as to whether
the Amarillo Baseball Club should be required
to pay taxes to the various taxing agencies
on the assessed valuation of the structures
placed upon the leased premises.

"We call your attention to the fact that
at the expiration of the contract involved,
the title to all of the improvements construc-
ted by the Amarillo Baseball Club passes to
and vests in the County as rentals for the use
of the ground upon which said improvements
are constructed.

"The various taxing agencies have requested
that I write your department for your opinion
as to whether the improvements constructed by
the baseball club are subject to taxation by
the various taxing units."

The following are pertinent provisions copied
from the court order and lease which your submitted with
your request:

(a) "It is agreed that at the expiration
of the term of this agreement the title to said
baseball park to be constructed upon the above
described property shall pass to and vest in fee
simple in the County, to be owned, occupied, and
used by it as it sees fit, which said baseball
park shall be received by the County in full sat-
isfaction of all rentals due and owing to it here-
under."

(b) "It is agreed that in the event Les-
see fails to use said baseball park for any one
or more baseball seasons for the purpose of
playing baseball therein, then and in such event
the County, or any one designated by it, shall
have the right to occupy, use and enjoy said
baseball park for any and all purposes that same
may be used without damaging said property be-
yond ordinary wear and tear during all of such
years as Lessee does not play baseball therein;
but in such years as Lessee plays baseball in
said baseball park, it shall be entitled to use
said park for the portion of such years as same
is not used for playing baseball for playing or
conducting other innocent sports therein, as
hereinabove provided for, it being in this con-
nection agreed that at any time when baseball
season is not in progress and Lessee is not
using or has not planned to use said baseball
park for other innocent sports, the County shall
have the right to delegate to the Amarillo Tri-
State Exposition the right to use said baseball park
for any purpose that will not damage same more
than playing baseball therein, and beyond ordin-
ary wear and tear without cost whatsoever to
said Amarillo Tri-State Exposition, provided
however that any material damage beyond ordinary
wear and tear done to said premises by said Am-
arillo Tri-State Exposition shall be repaired by
it at its own cost and expense."

(c) "It is agreed that in the event it is determined by the various taxing agencies that the improvements constructed upon the above described tract of land by Lessee are taxable as personal property, the Lessee shall and will promptly pay such taxes as they become due and payable."

(d) "It is agreed that in the event Lessee installs a lighting system in said baseball park for the purpose of playing baseball therein at night time, same shall be at all times considered personal property and not a part of the baseball park; and upon the expiration of the term herein or at any time it desires Lessee shall have the right to remove all or any part of said lighting system from said baseball park, there being reserved to the County, however, the right to purchase said lighting system from Lessee at the expiration of the term hereof or at such other time as Lessee discontinues using said baseball park or upon a breach of any of the covenants herein contained and the declaration of a forfeiture by the County for a price to be determined in the same manner provided for determining the value of salvage in Paragraph 3 hereof."

In Armstrong v. Mission Independent School Dist. et al., 195 S. W. 895, (reversed on other grounds in 222 S. W. 201) the court held that improvements placed upon the land of a railroad company by a lessee with an agreement that it was for the use of the lessee and with the further agreement that it could be removed was personal property and not real estate. The court said, however, by way of dictum:

"If it were not personal property and were real estate, it could not have been taxed as the property of the Mission Cotton Oil Company, but as the property of the railroad company that owned the land to which the improvements were affixed."

In your fact situation, we have improvements erected by the lessee upon land of a county, with no right to remove such improvements, but an express agreement that title thereto "shall pass to and vest in . . . the county" at the expiration of the term of the lease. See paragraph "(a)" above. The lease agreement furt her provides that the lessee will pay the taxes against the improvements "in the event it is determined by the various taxing agencies that the improvements constructed upon the above described tract of land by Lessee are taxable as personal property." See paragraph "(c)" above.

The first question for our determination is: Are the improvements constructed by the lessee upon the land of the county "personal property"? We think not. It is true that the lease provides that title to the improvements shall pass to and vest in the county "at the expiration of the term" of the lease, but we are of the opinion that such improvements lost their character as "personal property" immediately upon being erected upon the land of the county and then became a part of the "real estate " of the county.

We have been unable to find any Texas cases directly in point, but in International Nav. Co. v. Barber, 47 N. E. 46, a shed erected by the lessee upon a pier, pursuant to a lease from the city requiring its erection, and providing that it was to become the property of the city on the expiration of the lease, was held to be the property of the city as soon as it was erected and affixed to the realty, and hence not assessable for taxation as property of the lessee. The court said:

"The appellants rest their argument with respect to the question of ownership upon the provision of the lease above mentioned, that the shed shall become the property of the city after the expiration of the lease, which provision, as they maintain, shows that it was in contemplation of both parties that the erections should be the property of the steamship company during the term of the lease. We think that this is an incorrect view of the situation.

It is a familiar rule that, when structures are erected by persons not owners of the land, they become part of the realty, and as such the property of the landowner. It requires an agreement to be expressed in order to prevent the operation of this rule. If the right of removal is reserved to the lessee in a lease, then in such a case he will be regarded as an owner of real estate for the purpose of taxation."

We think the above case is correct in principle and in harmony with the "dictum" in Armstrong v. Mission Independent School Dist., supra. Article 7171 provides that "all real estate shall be assessed to the owner thereof . . . ." "Real estate" is construed by Article 7146" to include the land itself. . . and all buildings, structures and improvements, or other fixtures of whatever kind thereon . . ."

In Dougherty v. Thompson, 9 S. W. 99, the Supreme Court of Texas said:

"The general rule is that the owner of real estate leased, is taxed upon the entire value of the property; and this satisfies the constitutional requirement that 'all property in this state, whether owned by natural persons or corporations other than municipal, shall be taxed in proportion to its value.'" (Emphasis ours)

We assume, for the purpose of this opinion, that the land of the county involved in your fact situation was exempt from taxation prior to the execution of the lease. If not, we think the lessee liable for the payment of the taxes under the covenant "(c)" above. As we construe this covenant, it is tantamount to saying that the lessee will pay all taxes against the improvements, if any are judicially determined to be due. Any other construction would render this covenant meaningless.

Assuming that the leased portion of the county was exempt prior to the lease, this question next arises:

Did such property lose its exempt character when leased to the baseball club for the purpose of playing baseball thereon? We think not. Obviously, such property is subject to taxation unless exempt either by the constitution or the statutes of this State.

This property is not exempt by Article 11, Section 9, of our constitution because it is not "owned or held only for public purposes" and is not "devoted exclusively to the use and benefit of the public." But Article 8, Section 2, of our constitution provides that "The Legislature may, by general laws, exempt from taxation public property used for public purposes . . ." The Legislature by Article 7150 has provided that "all property, whether real or personal, belonging exclusively to this State, or any political subdivision thereof" shall be exempt from taxation. Counties are political subdivisions of the State. Constitution, Article 11, Section 1.

Article 7150 would appear to be broad enough to cover the property in question, for certainly such property "belongs exclusively" to the county, but as pointed out in City of Abilene v.State, 113 S. W. (2d) 631, the exemption declared in this Article was more comprehensive than the power which the Legislature possessed.

In City of Abilene v. State, supra, the court held that 34 tracts of land purchased by the City of Abilene for the purpose of a reservoir site for impounding water to be used by the city was exempt from all taxation, though such tracts were being temporarily leased for agricultural purposes, where the city had not abandoned its intention to build the reservoir. It is significant that the trial court found that since acquisition of the lands by the city, it had "been leasing same for agricultural purposes for an approximate aggregate annual rental of $2,500 and that during the past five years cash rentals have been paid therefore and that prior to that time receipts from said property in cash were based upon annual production of agricultural products under the normal 1/3 and 1/4 rentals." In construing the above quoted provisions of our constitution and Article 7150, the court said:

"These considerations lead us to the con-
clusion that as to the power of the Legislature,
to exempt public property from taxation, all
such property should be regarded as 'used for
public purposes' when it is owned and held for
public purposes', but not owned or held exclu-
sively for such purposes; and there has been
no abandonment of such purposes.

". . . It is, therefore, our view that
when the facts of a given case establish the
ownership of property by a municipal corpora-
tion, which has been acquired for an author-
ized public purpose, and the purpose for which it
is owned and held has not been abandoned, such
property is to be regarded as used for public
purposes, and the Legislature has the power to
provide by general law for its exemption from
taxation."

There can be little doubt that the property owned
and held by Potter County for a fair-ground is "public
property" within the contemplation of our Constitution, and
owned and held for a "public purpose." Cases cited in 92
A. L. R. p. 77D. We think by the authority ofCity of Abi-
lene v. State, supra, it can be said to be "used for a pub-
lic purpose." No "cash rental" was paid Potter County,
but only the "baseball park" etc. which was a physical im-
provement to the fair-grounds. In this respect, here is a
stronger fact case then the City of Abilene v. State, supra,
for there the city did receive "cash rentals." Potter Coun-
ty reserved the right to use the "baseball park" etc. at all
times it was not being used for playing baseball, thereby
increasing the desirability of its fair-ground facilities.
See paragraph "(b)" above.

In State v. City of Houston, 140 S. W. (2) 277
(writ refused) the court said:

"The fact that the property was rented to private persons, and was closed to the public, does not necessarily determine that such is not held for a public purpose."

In our opinion, the Amarillo Baseball Club, Inc., is neither liable for taxes against the improvements as "personal property" belonging to it, nor by reason of its covenant in the lease to pay taxes, but that such club is liable to pay taxes against the "leasehold interest" it acquired by the lease. Article 7173 provides:

"Property held under a lease of three years or more . . . . belonging to this State, or that is exempt by law from taxation in the hands of the owner thereof, shall be considered for all purposes of taxation, as the property of the person so holding the same. . . ." (emphasis ours)

Article 7174 provides, in part:

"Taxable leasehold estates shall be valued at such a price as they would bring at a fair voluntary sale for cash."

In Daugherty v. Thompson, supra, the Court said:

"The only law providing that a lessee shall pay taxes on leased property is found in article 4691, Rev. St., which determines what leasehold estate shall be taxable. Subdivision 4, art. 4692, Rev. St., can have application to no other leasehold estates than such as are made taxable by the preceding article; for in all other cases, in the absence of a statute directing to the contrary, the owner of the real estate must pay taxes on the entire value of the land, whether leased or not. In cases to which article 4691 is applicable, it must be held that it was the intention of the legislature only to impose on the lessee a tax based on the value of the "taxable leasehold estate," and not impose upon him a tax based on a sum equal to the full value of the real estate, to be ascertained as provided in subdivisions 1, 2, 3, art. 4692, Rev.St."

The taxing policy of the State is expressed in Article 8, Section 1, of our Constitution as follows: "All property in this State, whether owned by natural persons or corporations, other than municipal, shall be taxed in proportion to its value. . .", and in Article 7145 as follows: "All property , real, personal or mixed, except such as may be hereafter expressly exempted, is subject to taxation, and the same shall be rendered and listed as herein provided." (emphasis ours)

Since the property in question is "held under a lease of three years or more" and is such property "that is exempt by law from taxation in the hands of the owner thereof," we are of the opinion that the "leasehold interest" of such baseball club in said property is taxable against the Amarillo Baseball Club, Inc., and Article 7173 is both applicable and controlling in your fact situation.

The lighting system is, of course, taxable against the baseball club.

Trusting that the above answers your questions, we are,

Yours very truly,

APPROVED NOV. 10, 1942
Grover Sellers
FIRST ASSISTANT ATTORNEY
GENERAL

ATTORNEY GENERAL OF TEXAS

By /s/

Thos. B. Duggan
Assistant

APPROVED OPINION COMMITTEE
BY B.B CHAIRMAN

TBD:mw